IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 01-321-04-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| ROBERT J. SKIRVING, | ) | |
| | ) | |
| Defendant. | ) | |

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Claire M. Fay
    Kent S. Robinson
    Hannah Horsley
    United States Attorney's Office
    1000 S. W. Third Avenue, Suite 600
    Portland, Oregon  97204

       Attorneys for Plaintiff

Jacob Wieselman
Winemiller Wieselman LLP
1420 World Trade Center
121 S. W. Salmon Street
Portland, Oregon 97204

    Attorney for Defendant

KING, Judge:

Before the court is Skirving's Motion to Suppress Evidence (#373).

## BACKGROUND[1]

Defendant Robert Skirving was arrested on January 5, 2004 and released with conditions on April 6, 2004. The conditions include that Skirving submit to a search of his person, place of residence, and vehicle at the direction of Pretrial Services.

On May 28, 2004, co-defendants Brink and Ferguson were arrested in Uganda. Based on information from anonymous sources, AUSA Claire Fay was concerned that Skirving would destroy evidence of ongoing criminal activity contained on his home computers when he heard about Brink's arrest. She contacted Pretrial Services Officer Brian Crist, who conferred with the duty magistrate about whether he could seize the computers under the pretrial search conditions.

Pretrial Officer Crist went to Skirving's home on June 1, 2004 and seized four computers which were held in the Pretrial Services office. During that time, Fay and Skirving's attorney, Kristen Winemiller, conferred about having a neutral third party image the computer hard drives and conduct a forensic examination of them. They selected NTI, where the computers were delivered on July 26, 2004. NTI copied the hard drives and returned the computers to Pretrial

---

[1] This section is written based on the parties' briefing and does not represent any findings of fact made by the court.

Services the next day. Crist returned the computers with the original hard drives to Skirving on August 5, 2004.

On March 16, 2005, IRS Special Agent Katherine Pinkston obtained warrants to search the four duplicate hard drives, which were still at NTI. The government provided key words for the search to NTI. On June 28, 2005, NTI gave Winemiller the material obtained from the copies of the hard drives obtained using the key words in the search. Fay and Winemiller had agreed that Winemiller would review the documents from the NTI search to check for attorney-client privileged material and work product material. Nonprivileged documents would be returned to NTI, which would give them to the government. The review had not been completed when Skirving filed this motion to suppress.

**DISCUSSION**

Skirving moves to suppress: (1) the evidence contained on the four computer hard drives and all evidence derived therefrom; and (2) all evidence seized pursuant to the March 16, 2005 search warrant. Skirving also seeks return of the duplicate hard drives.

Skirving relies on <u>United States v. Scott</u>, 424 F.3d 888 (Sept. 9, 2005), which the government concedes holds that warrantless searches of pretrial releasees require a showing of probable cause, despite any pre-release consent to search given by the releasee as a condition of the release.

The government argues that it had probable cause to search and seize the computers but contends that the court need not undertake an evidentiary hearing because the United States does not intend to introduce any evidence obtained from Skirving's computer hard drives against him in its case in chief. The government asks that the court order Skirving to complete his privilege

PAGE 3 - OPINION AND ORDER

review of the hard drives' contents so that the government can use the nonprivileged documents for impeachment or investigatory purposes.

"[A] defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." United States v. Havens, 446 U.S. 620, 627-28, 100 S. Ct. 1912 (1980).

In his reply, Skirving insists that there was not probable cause for either the seizure by Pretrial Services or the later search under the warrant. Skirving notes that the veracity of the anonymous sources is unknown, that the sources did not know the true names of the people communicating with Brink over the internet, and that Brink and Skirving did not want information saved to hard drives, making the need to search the computers less obvious.

Skirving does not believe the suppression issues are moot and argues that the government has no right to compound the earlier illegalities by foraging through the hard drives in an attempt to fill in gaps with after-acquired information. He notes that the court has the rare opportunity of preventing the next violation before it occurs because the government has not yet "seen" the content of the hard drives. Skirving wants the government to be precluded from using the seized information as substantive evidence in this prosecution or any other prosecution, or for impeachment or investigatory purposes.

The government wants to keep the copies of the hard drives and asks the court to order Skirving to finish the privilege review so the government can access the nonprivileged documents. The government cites Ramsden v. United States, 2 F.3d 322 (9th Cir. 1993), cert.

denied, 511 U.S. 1058 (1994), which discusses the 1989 Advisory Committee Notes for Federal Rule of Criminal Procedure 41(e): "'[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property.' The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution." Id. at 326 (allowed government to retain copies of documents obtained in illegal search of hotel room so that copies could be turned over to British government under treaty obligations) (quoting Fed. R. Crim. P. 41(e)).

I acknowledge the holdings in the case law on which the government relies that, after balancing the interests, approve the use of illegally obtained evidence for impeachment or investigatory purposes. The difference here, however, is not that the evidence resides on a computer but that the government has not yet seen the evidence in a manner that allows the government to determine its evidentiary value. In Ramsden, the British official reviewed a portion of the seized documents and found that many of them were relevant to his office's investigation of the defendant. Id. at 324. In Havens, the evidence was a T-shirt with holes cut out that matched the makeshift pockets containing the drugs. Havens, 446 U.S. at 622. In contrast, the possible unconstitutional seizures of Skirving's computers have only occurred in part. Any illegality would be worsened by the government's use of the copies of the hard drives for any purpose.

At argument, the government provided In re Search Warrant for K-Sports Imports, Inc., 163 F.R.D. 594 (C.D. Cal. 1995), in which the court held that the search warrant was overbroad. The court ordered the return of all original documents and computer records to K-Sports *after* the government had an opportunity to review and duplicate them. The review had apparently not

PAGE 5 - OPINION AND ORDER

taken place at the time of the ruling, the same as here. Id. at 597-98. I decline to follow K-Sports. The court did not address the argument raised by Skirving that the illegal seizure should be rectified to the extent possible.

I am persuaded by Skirving's argument. I also note that I am not relying on the sufficiently reprehensible conduct exception in Ramsden, 2 F.3d at 327. Although I am not making any final decisions on that point, it is doubtful that I would find reprehensible conduct based on the fact that the government was following pre-*Scott* law when it seized the computers.

Accordingly, I will not allow the government to retain and use the copies of the computer hard drives unless, under Scott, there is a showing of probable cause. That issue will be decided in an evidentiary hearing, if the government decides to pursue it. Otherwise, I will order the government to retrieve the copies of the hard drives from NTI and return them to Skirving without viewing their content.

## CONCLUSION

Ruling is deferred on Skirving's Motion to Suppress Evidence (#373) except that I deny Skirving's motion for a *Franks* hearing, with leave to renew. Skirving has not made the required preliminary showing but was still investigating the issue. The government is asked to inform the court by January 6, 2006 on whether it seeks an evidentiary hearing.

IT IS SO ORDERED.

Dated this ____14th_____ day of December, 2005.

                                               ___/s/ Garr M. King_____
                                               Garr M. King
                                               United States District Judge